CONSOLIDATED APPEAL NOS.
24-11230 & 24-13317

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

Gregory Tony, in his official capacity as Sheriff of Broward County,
Plaintiff-Appellee,

v.

Evanston Insurance Company,
Defendant-Appellant.

_____

Appeal from the United States District Court for the Southern District of Florida,
The Honorable William P. Dimitrouleas, Case No. 22-cv-62076-WPD

_____

### BRIEF OF APPELLEE

_____

Alexis Fields, Fla. Bar No. 95953
fields@kolawyers.com
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
*Attorneys for Plaintiff/Appellee*
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Tel: (954) 525-4100
Fax: (954) 525-4300

Sheriff of Broward County v. Evanston Insurance Company
11th Circuit Docket Numbers 24-11230 & 24-13317

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Eleventh Circuit Rule 26.1-1, the undersigned, counsel for Appellee, Gregory Tony, in his official capacity as Sheriff of Broward County, hereby certifies that the following is a complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case on appeal, including subsidiaries, conglomerates, affiliates, and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

i     Alhalel, Joshua R. (Counsel for Plaintiff/Appellee)

ii    Augustin-Birch, Honorable Panayotta D. (United States Magistrate Judge for the Southern District of Florida)

iii   Cimo Mazer Mark (Counsel for Plaintiff/Appellee)

iv    Dimitrouleas, Honorable William P. (United States District Judge for the Southern District of Florida)

v     Evanston Insurance Company (Defendant/Appellant)

vi    Ferguson, David (Counsel for Plaintiff/Appellee)

vii   Fields, Alexis (Counsel for Plaintiff/Appellee)

viii  Haimovitch, Seth D. (Counsel for Plaintiff/Appellee)

ix    Kennedys CMK, LLP (Counsel for Defendant/Appellant)

x     Kopelowitz Ostrow Ferguson Weiselberg Gilbert (Counsel for Plaintiff/Appellee)

xi     Lang Jr., Joseph H. (Counsel for Defendant/Appellant)

xii    Lewis, Jordan H. (Counsel for Defendant/Appellant)

xiii   Markel Group, Inc. (**NYSE: MKL**) (see disclosure statement below)

xiv    Mazer, Jason S. (Counsel for Plaintiff/Appellee)

xv     Mazer Law, P.A. (Counsel for Plaintiff/Appellee)

xvi    Perkins, Kristen D. (Counsel for Defendant/Appellant)

xvii   Spinner, Samuel B. (Counsel for Defendant/Appellant)

xviii  Tony, Gregory, in his official capacity as Sheriff of Broward County (Plaintiff/Appellee)

xix    Vander Klok, Jedidiah D. (Counsel for Defendant/Appellant)


Defendant/Appellant Evanston Insurance Company stated that it is a wholly-owned subsidiary of Markel Group, Inc., a publicly-traded company (NYSE: MKL). No individual or entity owns more than 10% of Markel Group, Inc. stock.

DATED this 10th day of February, 2025.

Respectfully submitted,

/s/ Alexis Fields_____
Alexis Fields, Fla. Bar No. 95953
fields@kolawyers.com
KOPELOWITZ OSTROW
FERGUSON WEISELBERG GILBERT
One West Las Olas Blvd., Ste. 500
Fort Lauderdale, Florida 33301
Tel: (954) 525-4100
Fax: (954) 525-4300

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

The Appellee agrees with Appellant regarding Oral Argument, as oral argument would likely be useful to the panel.

## **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS ...............................................C1

STATEMENT REGARDING ORAL ARGUMENT ......................................... i

TABLE OF CITATIONS ................................................................. iv

PREFACE ................................................................................ 1

STATEMENT OF THE CASE........................................................... 2

    I.    STATEMENT OF THE FACTS ...........................................2

    II.    COURSE OF PROCEEDINGS AND DISPOSITION..........................5

SUMMARY OF THE ARGUMENT ..................................................7

    I.    THE DISTRICT COURT CORRECTLY CONCLUDED
        THERE WAS A JUSTICIABLE CONTROVERSY .............................9

    II.    THE DISTRICT COURT PROPERLY FOUND THAT THE
        PARKLAND SHOOTING INCIDENT CONSTITUTES A
        SINGLE OCCURENCE ..................................................... 16

    III.    THE DISTRICT COURT DID NOT ERR BY CONSTRUING
        AMBIGUITY IN THE POLICY IN BSO'S FAVOR......................... 23

    IV.    THE DISTRICT COURT CORRECTLY AWARDED BSO ITS
        ATTORNEY'S FEES AND COSTS ...................................... 29
        a.  Preliminary acknowledgement..................................... 29
        b.  Standard of Review ................................................ 30
        c.  The District Court Factually Determined Evanston Denied
            Insurance Benefits .......................................... 30
        d.  The District Court Applied The Correct Standard of Law........... 32

CONCLUSION ......................................................................... 34

CERTIFICATE OF COMPLIANCE................................................ 36

CERTIFICATE OF SERVICE ........................................................................... 37

## <u>TABLE OF CITATIONS</u>

<u>Cases</u>                                                                                      <u>Page(s)</u>

*Access Now, Inc. v. Sw. Airlines Co.*,
    385 F.3d 1324 (11th Cir. 2004)................................................................. 15

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................ 14

*Auto-Owners Ins. Co. v. Anderso*n,
    756 So. 2d 29 (Fla. 2000)................................................................... 25, 26

*Barnett v. Dep't of Fin. Services*,
    303 So. 3d 508 (Fla. 2020)..................................................................... 21

*Bassette v. Standard Fire Ins. Co.*,
    803 So. 2d 744 (Fla. 2d DCA 2001) ............................................... 33, 34

*Bell v. U.S.B. Acquisition Co.*,
    734 So. 2d 403 (Fla. 1999)..................................................................... 33

*CBS Broad., Inc. v. EchoStar Communications Corp.*,
    265 F.3d 1193 (11th Cir. 2001)............................................................. 30

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)....................... 15

*Fayad v. Clarendon Nat'l Ins. Co.*,
    899 So. 2d 1082 (Fla. 2005).................................................................. 25

*Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*,
    420 F.3d 1317 (11th Cir. 2005).............................................................. 20

*Guttenberg v. Sch. Bd. of Broward Cnty.*,
    303 So. 3d 518 (Fla. 2020).................................................................... 21

*Hartford Cas. Ins. Co. v. Estate of George Williams Gage, III*,
    2024 WL 982513 (M.D. Fla., Feb. 2, 2024) ........................................ 32

iv

*Hudson v. Prudential Prop. & Cas. Ins.* Co.,
450 So. 2d 565 (Fla. 2d DCA 1984) ................................................... 25

*J.P.F.D. Inv. Corp. v. United Specialty Ins. Co.*,
769 Fed. Appx. 698 (11th Cir. 2019) ................................................. 31

*Koikos v. Travelers Ins. Co.*, 849 So. 2d 263, 273 (Fla. 2003)
849 So. 2d 263 (Fla. 2003) ..............................................................Passim

*LM Gen. Ins. Co. v. Blackwell*,
2024 WL 1283694,n.2 (M.D. Fla. Mar. 26, 2024) ............................. 33

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) .......................................................................... 11

*N. Am. Med. Corp. v. Axiom Worldwide, Inc.*,
522 F.3d 1211 (11th Cir. 2008) ........................................................ 31

*Penzer v. Transp. Ins. Co.*,
29 So. 3d 1000 (Fla. 2010) ............................................................... 25

*Porter v. Ray*,
461 F.3d 1315 (11th Cir. 2006) ........................................................ 14

*Shiloh Christian Center v. Aspen Specialty Ins. Co.*,
65 F.4th 623 (11th Cir. 2023) ........................................................... 29

*State Nat. Ins. Co. v. City of Miami*,
403 Fed. Appx. 478 (11th Cir. 2010) ................................................ 19

*State Nat. Ins. Co. v. Lamberti*,
362 Fed. Appx. 76 (11th Cir. 2010) .................................................. 19

*Taurus Holdings, Inc. v. U.S. Fid. and Guar. Co.*,
913 So. 2d 528 (Fla. 2005) ............................................................. 6, 18

*The Sch. Bd. of Broward Cnty. v. The Great Am. Ins. Co.*,
807 So. 2d 750 (Fla. 4th DCA 2002) ............................................ 27, 28

*Travelers Indem. Co. v. PCR Inc.*,
  889 So. 2d 779 (Fla. 2004) ............................................................... 26

*Travelers of Fla. v. Stormont*,
  43 So. 3d 941 ................................................................................... 33

*U.S. ex rel. Atkins v. McInteer*,
  470 F.3d 1350 (11th Cir. 2006) ........................................................ 19

*United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala.*,
  941 F.2d 1428 (11th Cir. 1991) .................................................. 14, 15

*Warwick Corp. v. Turetsky*,
  227 So. 3d 621 (Fla. 4th DCA 2017) ........................................... 26, 27

*Washington Nat'l Ins. Co. v. Ruderman*,
  117 So. 3d 943 (Fla. 2013) ......................................................... 25, 29

*Westmoreland v. Lumbermens Mut. Cas. Co.*,
  704 So. 2d 176 (Fla. 4th DCA 1997) ................................................ 25

*Zucker for BankUnited Fin. Corp. v. U.S. Specialty Ins. Co.*,
  856 F.3d 1343 (11th Cir. 2017) ........................................................ 24

## <u>Federal Statutes</u>                                                   <u>Page(s)</u>

Fla. Stat. § 626.9373(1) ...................................................................... 32
Fla. Stat. § 627.428 ...................................................................... 32, 33

## <u>Federal Court Rules</u>                                               <u>Page(s)</u>

11th Cir. R. 28-1(i)(ii) ...................................................................... 2, 6
11th Cir. R. 26.1-1 .............................................................................. 1
Fed. R. App. P. 28(a)(6) ....................................................................... 2
Fed. R. App. P. 32(a)(7)(B) ................................................................ 36

## <u>PREFACE</u>

The following references will be used in this Brief:

The Appellant, Evanston Insurance Company, will be referred to as "Evanston" or the "Appellant." The Appellee, Gregory Tony in his official capacity as the Sheriff of Broward County, shall be referred to as "BSO" or the "Appellee."

References to the Appellant's initial brief as to the final judgment appear herein using the following format: Judgment Brief at __. References to the Appellant's initial brief as to the fees order appear herein using the following format: Fees Brief at __.

References to docket entries from the District Court record appear herein using the following format: R. __ at __.

## STATEMENT OF THE CASE

The purpose of providing a Statement of the Case is not to color the facts in one's favor, but to inform the appellate court of the case's procedural history and the pertinent record facts underlying the parties' dispute. *See* Fed. R. App. P. 28(a)(6) and 11th Cir. R. 28-1(i)(ii). Accordingly, this Court should disregard Evanston's improper statement, which includes argument and legal analysis of case law. A complete Statement of the Case without argument follows:

## Statement Of The Facts

The litigation in this case stems from the horrific massacre at Marjory Stoneman Douglas High School (the "Parkland Shooting Incident") taking place on February 14, 2018, in which seventeen people were murdered and several more people were injured. [R. 89 at ¶ 1]; [R. 101 at ¶ 1]; [R. 92 at ¶¶ 1-3]; [R. 99 at ¶¶ 1-3]. The issues in dispute in this appeal concern the interpretation of the contractual terms of an insurance policy with respect to the parties' rights and obligations under the policy as a result of the Parkland Shooting Incident.

BSO purchased an insurance policy with Evanston that provided excess insurance coverage during the relevant time period (the "Policy"). [R.89 at ¶ 2]; [R. 101 at ¶ 2] [R. 92 at ¶ 9]; [R. 99 at ¶ 9]. Under the Policy, BSO must first exhaust an aggregate annual deductible of $500,000 (the "AAD") incurred throughout the year of the policy period. [R. 101 at ¶ 3].

Once BSO satisfies the AAD, BSO can then seek excess coverage with respect to each 'occurrence' that takes place within the covered territory. BSO is responsible for the first $500,000 for each covered occurrence ("SIR"), which can be comprised of judgments, settlements, and claims expenses such as attorney's fees. [R.89 at ¶¶ 3-5]; [R. 101 at ¶¶ 3-5] [R. 92 at ¶ 9]; [R. 99 at ¶ 9] [R. 89 at ¶¶ 7-8]; [R. 101 at ¶¶ 7-8]. Unlike the AAD, the SIR applies separately to each covered occurrence, which is specifically defined in the Policy. [R. 92 at ¶ 10]; [R. 99 at ¶ 10].

The term "occurrence" is specifically defined within the Policy to mean:

an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

[R.89 at ¶ 6]; [R. 101 at ¶ 6]; [R. 92 at ¶ 11]; [R. 99 at ¶ 11]. Though there is record evidence BSO hired an insurance broker and had some negotiating power, BSO had no involvement in preparing or drafting the standard definition of the term 'occurrence' used by Evanston in the Policy. [R. 89 at ¶ 12]; [R. 101 at ¶ 12]; [R. 92 at ¶ 68]; [R. 99 at ¶ 68]. The record testimony is that the definition of "occurrence" in the Evanston Policy is "materially identical" to that contained in nearly every commercial general liability policy. [Green Dep. p. 39:6-17]; [R. 110 at 13].

Since the Parkland Shooting Incident, sixty lawsuits were filed against BSO (and others) by victims and their families. [R.89 at ¶ 1]; [R. 101 at ¶ 1]; [R. 92 at ¶¶ 5-6]; [R. 99 at ¶¶ 5-6]. It is not disputed that the Policy was in effect during the

Parkland Shooting Incident, nor that the events in connection with the Parkland Shooting Incident would be covered under the Policy as long as both the AAD and SIR were satisfied. [R.89 at ¶ 2]; [R. 101 at ¶ 2]. However, a dispute arose between the parties as to whether the Parkland Shooting Incident constituted a single occurrence or multiple occurrences under the Policy. [R.89 at ¶ 14]; [R. 101 at ¶ 14].

BSO contends the Parkland Shooting Incident is a single occurrence, whereas Evanston contends that each individual victim is a separate, distinct occurrence. [R.89 at ¶ 14-16]; [R. 101 at ¶¶ 14-16]. The difference is significant, as Evanston's interpretation would require BSO to exhaust the $500,000 SIR for each of the 60 individuals who have sued BSO – meaning "tens of millions of dollars" – before Evanston's obligations under the Policy are triggered. [R. 110 at p. 9].

Though no adverse judgment has been entered against BSO in connection with the Parkland Shooting Incident, BSO has already incurred more than $2 million in claim expenses in connection with the defense of the still pending claims. [R.89 at ¶ 13]; [R. 92 at ¶ 13]; [R. 92 at ¶ 6]; [R. 99 at ¶ 6]. Moreover, BSO separately paid more than $1 million in covered settlements and judgments in other unrelated matters during the applicable Policy Period. BSO satisfied the $500,000 AAD requirement of the Policy. [R. 99 at ¶ 84]. *See also* [R-110 at p. 9] (noting that there is no record evidence disputing that BSO satisfied the separate $500,000 AAD).

Prior to initiation of this action, the parties exchanged correspondence regarding coverage under the Policy in connection with the Parkland Shooting Incident. [R. 123-1]; [R. 123-2]; [R. 124-1]; [R. 124-2]. BSO informed Evanston of the multiple lawsuits against BSO stemming from the Parkland Shooting Incident, and in one of its letters with reference to a claim number, Evanston advised BSO that it "maintains its position that each gunshot that resulted in injury or death to a victim of the shooting constitutes a separate 'occurrence' under the Policy" and that "the Policy's $500,000 [SIR] applies, at the very least, to each plaintiff victim in the lawsuits related to the shooting." [R. 124-2]. The letter included an analysis of case law that, according to Evanston's counsel "compel[s] the conclusion that under Florida law, in cases involving shooting incidents, each separate shot resulting in a separate injury to an individual victim will constitute a separate occurrence under an insurance policy." [R. 124-2 at pp. 2–3].

## Course Of Proceedings And Disposition

Given the interpretive contractual dispute between the parties, BSO filed a complaint for declaratory relief against Evanston in state court, which Evanston removed to federal court on diversity jurisdiction grounds. [R. 1]. BSO then amended its complaint seeking a declaratory judgment concerning the parties' rights and obligations under the Policy—namely, a declaration that the Parkland Shooting Incident constitutes a single "occurrence" under the Policy and that BSO must

exhaust only a single SIR of $500,000.  [R. 20].

Evanston moved to dismiss the operative complaint, arguing that the Parkland Shooting Incident constitutes more than one occurrence under the Policy as a matter of law.  [R. 21].  The district court denied Evanston's motion to dismiss, finding against Evanston on the interpretation of the disputed term as a matter of law, and providing an in-depth legal analysis.  [R. 28].  The district court held:

> [T]he term "occurrence" within the meaning of the Policy is ambiguous as applied to the facts in this case, as it reasonably can be interpreted to mean either the entire shooting spree by Cruz or each shot he fired that resulted in separate injuries to a separate victim.  Applying *Koikos* and its progeny, because BSO favors the Parkland Shooting Incident to be a single "occurrence" under the Policy, that is the interpretation this Court adopts under Florida's well-settled principles of insurance policy interpretation, which require ambiguity in an insurance policy to be construed in favor of the insured.  *See Koikos*, 849 So. 2d at 273; *Taurus*, 913 So. 2d at 534; *Maddox*, 129 So. 3d at 1182.  Accordingly, the Court denies Defendant Evanston's motion to dismiss for failure to state a claim.

[R. 28 at ¶ 18].

Evanston duly filed its answer and affirmative defenses, raising 18 affirmative defenses to the declaratory relief sought by BSO.  [R. 40].  At no point in the litigation did Evanston bring a countersuit seeking its own declaratory relief as to its interpretation or any other dispute over the Policy terms.  [R. 40]; [R. 110 at p. 16].

Following discovery, the parties filed competing summary judgment motions.  [R. 88]; [R. 93].  The district court concluded that six of Evanston's affirmative defenses were irrelevant to the claim for declaratory relief, and that the remaining

twelve affirmative defenses were mere denials.  [R. 110 at pp. 14-18].  The district court ruled in BSO's favor, granting BSO's motion for summary judgment and denying Evanston's motion.  [R. 110].  Within its summary judgment order, the district court also expressly incorporated the order on the motion to dismiss.  [R. 110 at fn. 2].  The final judgment was entered in BSO's favor, and Evanston appealed the judgment.  [R. 111]; [R. 114].

After entry of final judgment, BSO moved for an award of its attorney's fees in connection with the litigation.  [R. 121].  Evanston opposed the attorney's fees request.  [R. 123].  The magistrate judge made a report and recommendation granting BSO's motion for fees, which was ultimately approved and adopted by the district court over Evanston's objection.  [R. 125]; [R. 127]; [R. 130].

Evanston appealed the order granting BSO's motion for fees.  [R. 131]. Though Evanston has filed two separate initial briefs for the appeal of the final judgment and appeal of the attorney's fees award, this Court entered a consolidation order on November 13, 2024.  Pursuant to the consolidation order, BSO brings this unified answer brief as to both appeals.

## SUMMARY OF THE ARGUMENT

Both the judgment and fee award should be affirmed, as Evanston fails to meet its burden on appeal to establish any basis for reversal.  The facts and record evidence exclusively support the determination that BSO had satisfied both the SIR

and AAD separately.  Therefore, resolution of the dispute over the term 'occurrence' as applied to the Parkland Shooting Incident was ripe for judicial determination and not an advisory opinion.  Evanston was unsuccessful at the trial level with its attempts to distract from the issues with its strained interpretations of irrelevant provisions, and this Court should similarly reject Evanston's attempts on appeal.  Moreover, this Court should not countenance Evanston's attempt to quarrel with record evidence and argue facts it did not properly dispute at the trial level for the first time on appeal.

Finding that the Parkland Shooting Incident is a single occurrence was the correct conclusion.  As applied to the Parkland Shooting Incident, the definition of 'occurrence' under the terms of the Policy is ambiguous, and Florida law makes it abundantly clear that ambiguities must be construed in favor of the insured, as it is the state's well-established policy to favor broader coverage.  Florida does not recognize a "sophisticated insured" exception to this policy.  Furthermore, the Florida Supreme Court has already expressly held that the very same Parkland Shooting Incident constitutes a single occurrence under a statutory analysis; logic dictates the same conclusion here.

In any event, even under Evanston's incorrect and narrow reading of case law, it would be impossible to distinguish either space and time each and every bullet that came from the shooter's AR-15, and not every victim of the Parkland Shooting

Incident was physically touched by a bullet. It is therefore absurd to impose a definition of 'occurrence' as applied to the instant facts that does not account for all of the incurred injuries or could otherwise never be determined.

Finally, the district court made a factual determination supported by record evidence that Evanston denied BSO's Parkland Shooting Incident claim. Evanston does not and cannot show that this factual determination was clearly erroneous. Regardless, the district court applied the correct standard of law, as the relevant fee provision entitles an insured to recover their attorney's fees and costs, including in a declaratory judgment action. BSO had no recourse other than to bring a declaratory action, and therefore it was reasonably necessary to file suit.

## **ARGUMENT**

### I.    THE DISTRICT COURT CORRECTLY CONCLUDED THERE WAS A JUSTTICIABLE CONTROVERSY.

Evanston's argument regarding the impossibility of the Parkland Shooting Incident triggering coverage is in equal parts confusing and just plain wrong. The district court was correct when it described Evanston's argument as "contrived interpretations" of the Policy and found it "to be entirely without merit." [R. 110 at p. 9].

First, Evanston acknowledges that claim expenses can be used to satisfy the SIR of $500,000 per occurrence. [R. 89 at ¶¶ 7-8]; [R. 101 at ¶¶ 7-8]; Judgment Brief at pp. 27-28. Moreover, Evanston did not dispute at the trial level that BSO

has expended more than an aggregate $2 million defending against Parkland Shooting Incident claims. [R.89 at ¶ 13]; [R. 92 at ¶ 13]; [R. 92 at ¶ 6]; [R. 99 at ¶ 6].

Then, however, as it did at the trial level, Evanston delves into a discussion of a $300,000 state statutory cap for BSO's total potential *judgment* liability. According to Evanston, in light of this cap, it would be impossible to exceed the requisite threshold of the ultimate net loss without either a Florida Legislature claims bill or settlement within the limits of insurance coverage. *See* Judgment Brief at pp. 29-30. This argument is nonsensical and completely disregards Evanston's own admission that claim expenses are calculable in the SIR and therefore irreconcilable with being excluded from the ultimate net loss.

It is important to note that Evanston does not rely on record evidence or the existence of factual allegations to make its argument. Rather, it gets to its absurd conclusion through its own distorted, separately disputed interpretation of a Policy endorsement that is not at issue in this case. *See* Judgement Brief at pp. 27-29. Specifically, Evanston posits the endorsement removes claim expenses from the possible ultimate net loss Evanston would be obligated to pay, whereas BSO insists that the endorsement served to broaden coverage by excluding claim expenses from

the liability limits only.[1]  [R. 99 at ¶ 81]; [R. 89 at ¶ 10].  *See* also Judgment Brief at

pp. 27-29.  However, as aptly noted by the district court, Evanston did not bring its

own claim for declaratory relief, and the interpretation of the effect of the disputed

endorsement had no bearing on the only question put at issue: whether the Parkland

Shooting Incident constituted one occurrence under the Policy.  [R. 110 at pp. 8-10;

14-18].  The district court had no need- and in fact had no authority- to judicially

determine the effect of the disputed endorsement.  Based on the facts present in the

case and the reasonably viable construction of the Policy, the district court had

jurisdiction to determine the single issue before it.

　　　Pursuant to the Declaratory Judgment Act, a district court must first ascertain

whether there is a ripe, justiciable issue before it can ultimately decide on the merits.

It axiomatic that Evanston cannot premise the preliminary consideration upon a

presupposition that only its interpretation of the very disputed Policy is correct.  *See*

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) ("Basically, the

---

[1] Indeed, not only is Evanston's argument a distraction away from the actual issues
on appeal, but – to use the district court's phrasing – it rests upon "contrived
interpretations" of the Policy.  [R. 110 at p. 9].  Evanston takes an endorsement to
the Policy designed solely to ***broaden*** coverage by providing that any "claim
expenses" Evanston pays "*will be in addition to*, and will not reduce, the applicable
Limits of Insurance" and argues that it somehow ***narrows***—and potentially
eliminates altogether—coverage under the Policy.  By its plain language, however,
that is not what the endorsement does.  The endorsement removes "claim expenses"
from the definition of "ultimate net loss" only to *expand* what Evanston will pay; it
does not at all *reduce* BSO's coverage by preventing BSO from satisfying the AAD
through the payment of claim expenses.  [R. 88]; [R. 93].

question in each case is whether the facts alleged, *under all the circumstances*, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.") (emphasis added).  While litigants can certainly advocate their desired interpretation, the determination itself is not a fait accompli that could preclude jurisdiction of even considering an opposing interpretation.  To accept Evanston's argument is to say that a finding of jurisdiction automatically means BSO must prevail, and Evanston never could.

Also notable is Evanston's glossing over of the fact that it failed to provide any record evidence to the district court to refute BSO's sworn declaration testimony that BSO had satisfied the $500,000 AAD requirement.  *See* [R. 99 at ¶84] and [R. 106 at ¶84].  *See also* [R. 110 at p. 9] (noting that there is no record evidence disputing that BSO satisfied the separate $500,000 AAD).  Instead, Evanston purports to be perplexed, declares that the fact is in dispute, and now presents a quarrel with record facts for the first time on appeal.  *See* Judgment Brief at 31-32.

BSO submitted sworn declaration testimony in connection with its summary judgment motion.  [R. 89 at ex. 1].  The sworn testimony therein includes the statement:

> BSO, on the other hand, contends that the Parkland Shooting Incident constitutes a single occurrence under the Policy such that BSO must exhaust only a single Self-Insured Retention of $500,000 and a

$500,000 annual aggregate deductible- **both of which BSO has already exhausted**- before coverage is triggered under the Policy.

[R. 89 at ex. 1, ¶ 10] (emphasis added).

As part of its additional material facts provided in opposition to Evanston's motion for summary judgment, BSO cited to the sworn declaration and attachments asserting:

> BSO paid more than $1 million in covered settlements and judgments for claims made or suits brought for alleged occurrences that took place during the policy period of the Evanston Policy.

> BSO has satisfied the $500,000 AAD in the Evanston Policy.

[R. 99 at ¶¶ 84-85].

Though Evanston technically responded it disputed this fact, it did not point to or present any record evidence in rebuttal. [R. 106 at ¶¶ 84-85]. Instead, Evanston dismissively asserted there was a dispute, denied the materiality of the fact, and objected to the spreadsheet attachment on discovery and hearsay grounds. [R. 106 at ¶ 84]. Evanston further objected to the extent BSO was not asserting a fact but was making a legal argument. [R. 106 at ¶ 85]. Evanston did not move to strike this portion from the statement of facts. Therefore, as the district court correctly surmised, "It is undisputed **in the record** that BSO has already exhausted the separate $500,000 AAD by payment of covered judgments or settlements during the applicable period for the Policy." [R. 110 at p. 9] (emphasis added).

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (internal quotations omitted).  When the non-movant would bear the burden of proof as to a certain issue at trial, a summary judgment movant may simply point out an absence of evidence to support the non-moving party's case or provide "affirmative evidence demonstrating that the [non-movant] will be unable to prove its case at trial." *Id*. at 1438.

Once the movant satisfies its burden, the burden shifts to the non-movant, who must "go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).  "A factual dispute is genuine 'if the **evidence** is such that a reasonable jury could return a verdict for the nonmoving party.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (emphasis added).

Here, it was Evanston who asserted as an affirmative defense that the AAD had not been satisfied, and therefore BSO was supposedly not entitled to relief.  [R. at p. 5, ¶ 9].  Nevertheless, BSO affirmatively provided record evidence by way of

sworn declaration testimony that BSO had exhausted the $500,000 AAD through, at the very least, payment of covered judgments and settlements during the Policy period. [R. 99 at 84-85]. Evanston's failure to prove with record evidence that BSO had not done so, and then its further failure to rebut the evidence proffered by BSO that it had, is fatal to Evanston's claim.

Evanston bore "the initial responsibility of informing the [district] court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believe[d] demonstrate[d] the absence of a genuine issue of material fact." *Id*. at 1437 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

This Court should disregard Evanston's attempt now on appeal to argue against the facts it failed to either rebut or prove at summary judgment. "This Court has repeatedly held that 'an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (internal quotations omitted). Notably, however, even if Evanston's new factual contentions could be considered, it still fails to establish that BSO had not in fact satisfied the $500,000 AAD requirement; Evanston could not possibly prove this, as BSO absolutely satisfied the $500,000 AAD requirement, and no evidence to the contrary exists. Instead,

Evanston's newly raised quarrel with the record merely amounts to: (i) a self-serving proffered interpretation of BSO's spreadsheets without substantively contending with the record evidence of sworn testimony; and (ii) argumentatively and inappropriately construing the district court's recitation of the dispute as being a determination of equitability of the Policy (which the district court did not make) that caused the district court to intentionally ignore the AAD requirement (which the district court did not do).  *C.f.* Judgment Brief at 32-33 *with* [R. 110].

Under a reasonable interpretation of the Policy, and based on the undisputed evidence in the record, BSO separately satisfied both the AAD and SIR.  Therefore, based on the circumstances and record evidence presented in this case at summary judgment, it is plain that there was a ripe, justiciable and "*bona fide . . .*  dispute between the parties regarding the parties' rights and obligations under the Policy with regard to what SIR must be exhausted as to the Parkland Shooting Incident before coverage under the Policy is triggered."  [R. 110 at pp. 9-10]

The District Court's order finding that it had jurisdiction under the Declaratory Judgment Act should be affirmed on this ground.

## II.    THE DISTRICT COURT PROPERLY FOUND THAT THE PARKLAND SHOOTING INCIDENT CONSTITUTES A SINGLE OCCURENCE

Contrary to Evanston's argument, *Koikos* does not require this Court to conclude that each gunshot is a separate "occurrence."  First, Evanston couches the

opinion as being a decision wholly divorced from an ambiguity construed against the insurance carrier.  Second, Evanston erroneously pronounces that the *Koikos* court held a factual scenario involving multiple gunshot victims equates to multiple occurrences under similar policy language as a matter of law.  Both positions are specious.

In *Koikos*, the Florida Supreme Court specifically found that the "policy's definition of occurrence **as applied to the facts** of this case is susceptible to more than one reasonable interpretation.  'Occurrence' can reasonably be stated to refer to the entire shooting spree or to each separate shot that resulted in a separate injury to a separate victim." *Koikos v. Travelers Ins. Co.*, 849 So. 2d 263, 273 (Fla. 2003) (emphasis added).  Because of this ambiguity, the court "construed the term 'occurrence' in [the] policy in favor of the insured." *Id*.  The conclusion that each shooting of a separate victim constitutes a separate occurrence was reached because identical policy language was determined to be ambiguous and because the non-drafting policyholder *favored* multiple occurrences to maximize the available limits of liability. *Id*.

As expressly stated in the opinion, "[a]mbiguous policy provisions are interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy. . .  Where policy language is subject to differing interpretations, the term should be construed liberally in favor of the insured and strictly against the

insurer." *Id*. at 271 (internal quotations omitted). "We emphasize that we reach our decision by looking at the language of the policy in a manner consistent with precedent regarding the construction of insurance policies in this State." *Id*. at 273. So, as a matter of law, the contractual interpretation of an ambiguous term was construed favorably for the policyholder. Evanston's contention that all incorporated references and citations to authority regarding ambiguities in the *Koikos* opinion is merely dicta and that the Florida Supreme Court precluded application of contra proferentem is baseless.

To be sure, the Florida Supreme Court itself has subsequently confirmed that the holding in *Koikos* was based on ambiguity. *See Taurus Holdings, Inc. v. U.S. Fid. and Guar. Co.*, 913 So. 2d 528, 534 (Fla. 2005). As succinctly articulated, "the court in *Koikos* found there were multiple occurrences because the 'policy's definition of occurrence as applied to the facts of this case is susceptible to more than one reasonable interpretation.'" *Id*. (quoting *Koikos*, 849 So. 2d at 273). "Because the term 'occurrence' was ambiguous, we construed it in the insured's favor." *Taurus Holdings, Inc.*, 913 So. 2d at 534.

It is worth noting that Evanston falsely identifies this Court's unpublished affirmance of a district court summary judgment order as previously taking a step towards rejecting the argument *Koikos* was decided on ambiguity grounds. *See* Judgement Brief at p. 38. Any suggestion that an unpublished opinion of this Court

in any way alters the law is not well-founded.  *See U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1358 n.15 (11th Cir. 2006)).  This should particularly apply in an affirmance without any substantive analysis other than declaring the matter is being affirmed "for the reasons set forth" in a district court order.  *State Nat. Ins. Co. v. City of Miami*, 403 Fed. Appx. 478, 479 (11th Cir. 2010).

Similarly, Evanston's reliance on the unpublished *Lamberti* opinion is also unavailing.  Not only did *Lamberti* involve drastically different facts, but this Court held that the policy was not ambiguous as applied to those facts.  *State Nat. Ins. Co. v. Lamberti*, 362 Fed. Appx. 76, 81–82 (11th Cir. 2010).

The ultimate construction of the policy in favor of the non-drafter resulted in the opposite construction in *Koikos* as advanced by the non-drafter, BSO, in this case, and this Court has consistently applied the *Koikos* opinion to achieve the same result where there is an ambiguity as applied to each individual fact pattern.  This does not and cannot mean that similar policy language- found to be ambiguous and thus construable against the drafter- has to be interpreted the same way here as to the Parkland Shooting Incident.  In fact, the exact opposite proposition applies.  As aptly qualified: "**In this case**, each shooting constitutes a separate occurrence . . . ." *Koikos* at 273. (emphasis added).  The state supreme court absolutely did not predetermine the construction of the ambiguous term 'occurrence'- even in the face

of similar or identical language- for all future insurance disputes as advanced by

Evanston.  *See* Judgment Brief at 34.

Moreover, the portion of the *Koikos* opinion relied upon by Evanston where

the court rejected the insurance carrier's argued interpretation based upon the cause

theory is not helpful to Evanston here.  As noted by this Court:

> The Florida Supreme Court, in *Koikos,* expressly rejected the notion
> that the 'continuous or repeated exposure' clause in the definition of
> 'occurrence' was intended as limiting language . . . .   The Florida
> Supreme Court and other jurisdictions have repeatedly held that such
> language was **intended to broaden coverage to apply to ongoing
> exposure to harmful environmental phenomena, and not to an
> insured's tortious omission**.

*Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317,

1332 (11th Cir. 2005) (emphasis added) (internal citations omitted).

Though the Florida Supreme Court did examine the two shootings and

concluded they were "distinguishable in time and space" in that case, it does not

follow that the same conclusion would be made under the circumstances of this case.

In fact, since *Koikos*, Florida courts have consistently held instances of mass

shooting events to be a single occurrence, whether through statute or insurance

policy interpretation.

Noting that "any ambiguity in an insurance contract must be 'liberally

construed in favor of coverage and strictly against the insurer'" but ultimately basing

its holding on statutory immunity grounds, the Florida Supreme Court rather recently

held in a mass shooting context:

> The phrase "same incident or occurrence" is most reasonably understood as referring to the criminal (more broadly, injury-causing) event as a whole, not to the smaller segments of time and action that make up the crime against each individual victim, because this is the way that we commonly talk about this type of tragic occurrence—as a single event with multiple victims.

*Barnett v. Dep't of Fin. Services*, 303 So. 3d 508, 516-517 (Fla. 2020).

The Florida Supreme Court specifically adopted this holding as applied to the

Parkland Shooting Incident, though again on sovereign immunity grounds, "the mass

shooting committed by the shooter is a single 'incident or occurrence' . . . ."

*Guttenberg v. Sch. Bd. of Broward Cnty.*, 303 So. 3d 518, 519 (Fla. 2020) (cleaned

up).

It plainly stands to reason that if it is reasonable to interpret the Parkland

Shooting Incident as a single occurrence with multiple victims in the sovereign

immunity context, then it is an equally reasonable interpretation in the insurance

context—the only difference being who gets the benefit when there are multiple

reasonable interpretations. The district court specifically recognized this logical

conclusion in the order on the motion to dismiss, "[w]ith sovereign immunity, an

ambiguous term must be construed narrowly in favor of the government . . . with

insurance, it must be construed in favor of the policyholder." [R. 38 at pp. 16-17].

Given Florida's well-established law regarding construing policies in favor of

broader coverage and in favor of the insured, as well as the consistent recent rulings that mass shootings are a singular incident, the Parkland Shooting Incident should likewise be construed as one occurrence because that is the reasonable interpretation favored by the insured, BSO, providing broader coverage.

Contrary to what Evanston would have this Court believe, the events surrounding a horrific, school-shooting massacre perpetrated with an AR-15 rifle- as distinguished from the two individual gunshot injuries present in *Koikos*- are not "distinguishable in time and space" under the cause theory. Indeed, the harm that occurred during the Parkland Shooting Incident is not limited to just gunshot wounds. As can be gleaned from the record in a complaint attached as an exhibit to BSO's pleading, one survivor of the Parkland Shooting Incident described the event:

> Bullets were flying, windows shattering, students screaming, and gun smoke filled the stair well.
>
> [The survivor] could hear the screams and cries for help of her fellow classmates and teachers, including from two students that had been in her classroom but were killed in the hallway, and from the many others injured.
>
> After what seemed like an eternity, SWAT arrived and escorted [the survivor] and other classmates out of the school, but the sights, the smells, the carnage left behind was inescapable and unimaginably traumatizing.

[R. 20 at ex B, ¶¶ 30, 33-34]. This particular survivor was never touched by a bullet; a solitary trigger-pull cannot be identified as the distinct cause of her harm. Nevertheless, she is a victim of the Parkland Shooting Incident.

There is no basis to hoist the ultimate, literal construction of a similar contract provision under the facts of a different case - as opposed to the actual legal holding- unto this case. The *Koikos* court meant for the holding to apply under the specific presented facts and expressly emphasized Florida's precedent construing insurance policies "liberally in favor of the insured and strictly against the insurer." *Koikos* at 271. Furthermore, the events in the Parkland Shooting Incident are not "distinguishable in time and space," and cannot be reduced to individual gunshots fired; the *Koikos* application of the cause theory does not hold otherwise.

Here, the district court properly determined that the term occurrence is ambiguous as applied to the facts, and, consistent with Florida law, correctly construed the Policy in BSO's favor. The judgment should be affirmed.

## III.  THE DISTRICT COURT DID NOT ERR BY CONSTRUING AMBIGUITY IN THE POLICY IN BSO'S FAVOR

As a preliminary matter, it does not matter that BSO is a sophisticated party. There is no "sophisticated insured" exception to the rules of construction applicable to ambiguous insurance policy provisions under Florida law. As noted by the district court, "it is undisputed that BSO did not draft or prepare the language at issue, the definition of 'occurrence' used by Evanston in the Policy." [R. 110 at 13] (citing to [R. 89 at ¶ 12] [R 101 at ¶ 12]). The record testimony is that the definition of "occurrence" in the Evanston Policy is "materially identical" to that contained in

nearly every commercial general liability policy. [R. 90-7 at ex. B, 39:6-17]. [R. 101 at ¶12]. Therefore, Evanston's argument is inapplicable here.

Evanston correctly acknowledges that both the Florida Supreme Court and this Circuit recognize the well-established common law doctrine of contra proferentem, which requires courts to construe ambiguous terms in a contract against the drafter. Judgment Brief at p. 46-47. This has repeatedly been applied and upheld in an insurance policy context. Notably, Evanston does not- and cannot- dispute that the law in Florida explicitly favors construing insurance policies in favor of the insured. Moreover, there is no dispute that Florida law applies as to how the Policy is to be construed.

Evanston is asking that this Court to carve out an exception to this widely-applied and basic principle where it currently doesn't exist. According to Evanston, because BSO is a "sophisticated" entity, this Court should decline to extend the benefit of ambiguity to BSO, despite having no basis in Florida law to do so, and despite that it flies in the face of express Florida precedent. This Court should decline Evanston's invitation, notwithstanding the examples of district court orders Evanston provided. *See Zucker for BankUnited Fin. Corp. v. U.S. Specialty Ins. Co.*, 856 F.3d 1343, 1349 (11th Cir. 2017) ("When we address issues of state law, like the ones in this case, we are bound by the decisions of the state supreme court.").

Florida law is well-settled that insuring or coverage clauses are construed in the broadest possible manner to affect the greatest extent of coverage. *Hudson v. Prudential Prop. & Cas. Ins*. Co., 450 So. 2d 565, 568 (Fla. 2d DCA 1984). Exclusionary clauses, in contrast, are always strictly construed. *Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So. 2d 176, 179 (Fla. 4th DCA 1997). Because exclusions are fundamentally contrary to the purpose of insurance, Florida courts hold insurers "responsible for clearly setting forth what [is] excluded from coverage under the terms of the policy." *Fayad v. Clarendon Nat'l Ins. Co.*, 899 So. 2d 1082, 1086 (Fla. 2005). Accordingly, if an insurer intends to exclude or limit coverage, it must do so unambiguously. *Auto-Owners Ins. Co. v. Anderso*n, 756 So. 2d 29, 34 (Fla. 2000).

Where policy language is susceptible to more than one reasonable interpretation, the policy is considered ambiguous. *Penzer v. Transp. Ins. Co.*, 29 So. 3d 1000, 1005 (Fla. 2010). The Florida Supreme Court has made clear that any ambiguity in insurance policy language must be liberally construed in favor of coverage and strictly against the insurer. *Washington Nat'l Ins. Co. v. Ruderman*, 117 So. 3d 943, 949-50 (Fla. 2013); *Anderson*, 756 So. 2d at 34. In other words, where "one reasonable interpretation of the policy provisions would provide coverage, that is the construction which must be adopted." *Ruderman*, 117 So. 3d at 950. Ultimately, in determining whether policy language is ambiguous, Florida

courts may consider whether clearer language was available that the insurer could have used to remove the interpretive problem. *Anderson*, 756 So. 2d at 36.

As Evanston admits, there is no Florida precedent holding that an exception to contra proferentem applies based on the insured's sophistication. *See* Judgment Brief at 47. This makes sense, because of the consistent, well-established law and repeated pronunciation from the Florida Supreme Court. "When language in an insurance policy is ambiguous, a court will resolve the ambiguity in favor of the insured . . . " *Travelers Indem. Co. v. PCR Inc.*, 889 So. 2d 779, 785 (Fla. 2004).

Evanston misreads the Florida appellate cases it cites in support of its argument to ignore Florida Supreme Court precedent. *See* Judgment Brief 49-52. The *Warwick* decision did not involve a departure from Florida's express policy of construing ambiguous terms in insurance policies in favor of the insured, because the policy in that case was not ambiguous, and the trial court had not resorted to extrinsic evidence to determine the intent of the parties. *Warwick Corp. v. Turetsky*, 227 So. 3d 621, 624 (Fla. 4th DCA 2017). In fact, the *Warwick* court affirmatively noted, "[w]here a policy contains internally inconsistent language, a court must adopt the construction of the policy that will afford the most coverage." *Id.* at 625 (internal quotations omitted). Rather, the state appellate court only held that it was not error for the trial court to examine a document that was incorporated by reference in the policy, just not attached, in order to determine whether there was an ambiguity.

*Id*. at 624-25. It did not approve of using extrinsic evidence or considering the insured's sophistication to resolve an ambiguity because, unlike here, that policy was *not* ambiguous. *Id.* at 624. The fact that it was noted the insured in that case happened to be sophisticated was of no consequence.

The decision in *The School Board of Broward County* further demonstrates why this Court should reject Evanston's contention that Florida law could abide not construing an ambiguous insurance policy against the carrier. First, before engaging in any contra proferentem analysis, the court determined that the non-drafting party's proffered interpretation was unreasonable.

> The interpretation of the bond language urged by Great American would narrow the scope of coverage by allowing it to substitute a new contractor and surety for full performance under the contract. To accept Great American's tender, the School Board would have had to give up its right to insist on performance by Great American under the bond. The condition of the bond was Rockland's *full* performance, the construction of an athletic field and sports complex. Great American did not "correct" Rockland's default by tendering only a new deal.

*The Sch. Bd. of Broward Cnty. v. The Great Am. Ins. Co.*, 807 So. 2d 750, 751–52 (Fla. 4th DCA 2002). The contra proferentem argument was explicitly rejected because that rule of construction "is at best a secondary rule of interpretation, a 'last resort' which may be invoked after all of the ordinary interpretative guides have been exhausted and there remain two or more reasonable interpretations of the language in question." *Id*. at 752.

More importantly, however, the appellate court noted, "Florida's policy is to construe any ambiguity in a bond in favor of granting the broadest possible coverage to those intended to be benefitted by protection of the bond." *Id*. "This policy recognizes that the purpose of a bond is to protect a party to a contract; the burden is on the surety, who is in the business, to include the appropriate language in its bonds if it seeks to narrow its obligations after default." *Id*. In other words, the burden was on *Evanston* to include clearer language in the Policy if it wanted to avoid the term "occurrence" being ambiguous when applied to the facts of this case.

This highlights an important distinction under Florida law. Florida does not simply adopt the principle of construing ambiguities against the drafter. In the context of insurance policies – as with bonds – there is an explicit policy favoring construing ambiguities to the benefit of broad insurance coverage. Therefore, Evanston is incorrect when it represents that there is no indication the Florida Supreme Court would reject a "sophisticated insured exception." Really, there is no indication that it would *accept* such an exception, and every indication that the exception goes against the established law and policy of the state.

In short, Florida law does not permit this Court to consider extrinsic evidence of the insured's sophistication or the parties' intent to interpret the Policy. As this Court has stated unequivocally, "Florida law is clear that when an insurance policy is facially ambiguous, the ambiguity is resolved in favor of coverage and against the

insurer, without regard to extrinsic evidence of the parties' supposed intentions or expectations." *Shiloh Christian Center v. Aspen Specialty Ins. Co.*, 65 F.4th 623, 30-31 (11th Cir. 2023). *See also Washington Nat'l Ins. Co. v. Ruderman*, 117 So. 3d 943, 945 (Fla. 2013) (holding that where the policy language is ambiguous, "it must be construed against the insurer and in favor of coverage without resort to consideration of extrinsic evidence.").

There is no angle where Florida law would abide not construing the term "occurrence" as defined in the Policy in BSO's favor. The final judgment should be affirmed.

## IV.    THE DISTRICT COURT CORRECTLY AWARDED BSO ITS ATTORNEY'S FEES AND COSTS

### a. Preliminary Acknowledgement

To the extent some of the arguments raised as to the final judgment overlap and are virtually identical to arguments as to the fees judgment- such as exhaustion of the AAD, for example- BSO does not duplicate these arguments in different sections of this unified brief. Of course, BSO intends a universal, global application of its arguments as to both appeals being made together.

Moreover, given the sound reasoning, proper legal analysis, and correct findings made by the district court within the final judgment, the likelihood that the final judgment will be reversed is very slim. However, to the extent reversal should occur, BSO concedes that Evanston timely appealed the fees judgment, and an out-

right reversal of the final judgment would require reversal of the fees judgment as well.  Notwithstanding, to the extent any hypothetical reversal of the final judgment results in a remand for further proceedings at the district court level, any reversal of the fees judgment should be without prejudice to BSO to bring its fees claim once the matter is fully resolved.

### b.  Standard Of Review

Though Evanston identifies the correct standard of review in its Fees Brief, it engages in an incomplete analysis.  "We review the district court's findings of fact under a clearly erroneous standard, and its conclusions of law *de novo*." *CBS Broad., Inc. v. EchoStar Communications Corp.*, 265 F.3d 1193, 1200 (11th Cir. 2001).

Therefore, the factual findings made by the district court are afforded discretion, notwithstanding the de novo review of any legal conclusions.

### c. The District Court Factually Determined Evanston Denied Insurance Benefits

An essential underpinning of Evanston's argument against a fee award is Evanston's factual squabble with whether there was a denial of insurance benefits. Evanston baldly asserts there was not.  *See* Fees Brief at 25-29.  However, the magistrate judge (and the district court on de novo review) expressly found as a matter of fact that the letter dated September 28, 2020, "unequivocally denied insurance benefits until Plaintiff BSO exhausts the $500,000 SIR at least for each plaintiff shooting victim's claim against BSO in the lawsuits arising from the

Parkland Shooting Incident."  [R. 125]; [R. 130].

This determination is one of fact and subject to a clearly erroneous standard of review.  *See J.P.F.D. Inv. Corp. v. United Specialty Ins. Co.*, 769 Fed. Appx. 698, 703-4 (11th Cir. 2019) (describing the magistrate's determinations of the effect of presuit communications as findings of fact and noting "we would find no plain error in the district court's fact finding" that was not timely objected to).

Though Evanston vehemently disagrees with the factual determination, it fails to establish or even argue that the conclusion was clearly erroneous.  Rather, it lays out the same explanation of what was said and meant in the pre-suit communications as it presented at the trial level.  Evanston contends its letter dated September 28, 2020, did not serve to deny coverage, merely to "remind" BSO of the preconditions of the Policy.  Fees Brief at 28-29.  This insistence does not alter the record before this Court.

"[A] finding of fact is clearly erroneous only when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1216 (11th Cir. 2008).  Here, the finding that Evanston denied insurance benefits prior to the lawsuit being filed is supported by the September 28, 2020, letter.  Inter alia, the September 28, 2020, letter stated:

      i.    the insurance policy requires "that one or more SIRs be exhausted for

31

the claims of each victim before the . . . Policy can be called upon to

provide coverage"

ii.    Evanston "has no obligation to pay 'ultimate net loss' on behalf of

[BSO] until [BSO] pays the full amount of the SIR for each

'occurrence'" and

iii.    Evanston "has no obligation to pay 'ultimate net loss' unless and until

the $500,000 SIR is exhausted for each occurrence (i.e., at least every

claim/suit)").

[R. 124-2]. Given this record support, this Court should not disturb the correct ruling

from the district court, as it cannot rise to the level of clearly erroneous.

### d.  The District Court Applied The Correct Standard of Law

At the time Evanston issued the insurance policy to BSO, and at the time BSO

filed this declaratory judgment action against Evanston, Florida law provided that

an insured is entitled to an award of attorneys' fees when judgment is entered against

an insurer and in favor of the insured. *See* Fla. Stat. §§ 626.9373(1) and 627.428(1).

"Because the Florida legislature did not intend the 2023 Repeal to apply to actions

brought before its enactment, the statute is not retroactive. The 2023 Repeal does not

preclude [BSO] from seeking fees under section 627.428." *Hartford Cas. Ins. Co.*

*v. Estate of George Williams Gage, III,* No. 22-CV-2205, 2024 WL 982513, at *3–

4 (M.D. Fla., Feb. 2, 2024) (defendants were entitled to fees where insurance policy

was issued, and action was filed, prior to repeal of statute); *LM Gen. Ins. Co. v. Blackwell*, No. 8:22-cv-1750-CPT, 2024 WL 1283694, at *2 n.2 (M.D. Fla. Mar. 26, 2024) ("Although the Florida Legislature repealed section 627.428 in March 2023, the repeal delineates that it only applies to cases filed after the March 2023 effective date").

Florida law is clear when the fee award provision of section 627.428, Florida Statutes, applies: if an insured is required to enforce its rights under a policy and a judgment is rendered against the insurer, the insurer is *required* to pay attorneys' fees to the insured. *Bassette v. Standard Fire Ins. Co.*, 803 So. 2d 744, 746 (Fla. 2d DCA 2001) (citing *Bell v. U.S.B. Acquisition Co.*, 734 So. 2d 403 (Fla. 1999)); *Travelers of Fla. v. Stormont*, 43 So. 3d 941, 945 (insured entitled to attorneys' fees if it was "***reasonably necessary*** for the insured to file a court action") (emphasis added). "This applies when an insured prevails in a declaratory judgment action regarding coverage." *Bassette*, 803 So. 2d at 746.

In *Bassette*, because "the declaratory action involved a dispute as to whether [the insured] would be covered by the policy," and because this "dispute was finally resolved in [the insured's] favor by the trial court[]," the insured was entitled to recover her attorneys' fees in the declaratory judgment action. *Id.* at 746-47. As that court explained, "the purpose of section 627.428 is to penalize an insurance company for wrongfully causing its insured to resort to litigation in order to resolve

a conflict with its insurer when it was within the company's power to resolve it." *Id.* at 746. This is precisely what happened in the instant lawsuit. Believing (correctly) that it was entitled to coverage under the Policy upon exhaustion of a single SIR— and faced with the likely possibility of never exhausting a separate $500,00 SIR for each of the 60 lawsuits brought against it—BSO had no choice but "to resort to litigation in order to resolve a conflict with its insurer" that was within Evanston's power to resolve. And because Evanston's coverage position was incorrect as was its denial on that basis, BSO is entitled to recover prevailing party attorney's fees and costs as a matter of law.

Therefore, the district court correctly held that BSO is entitled to an award of fees and costs from Evanston. The judgment for fees and costs should be affirmed.

.

## **CONCLUSION**

The Appellee respectfully requests this Court affirm both the District Court's final judgment and fees and costs award on this appeal.

DATED this 10th day of February, 2025.

Respectfully submitted,

  */s/ Alexis Fields*_____
Alexis Fields, Fla. Bar No. 95953
fields@kolawyers.com
KOPELOWITZ OSTROW
FERGUSON WEISELBERG GILBERT

One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Tel: (954) 525-4100
Fax: (954) 525-4300

MAZER LAW, P.A.
255 Alhambra Circle, Suite 1160
Coral Gables, FL 33134
Tel: (305) 374-6481
Cell: (305) 799-9157
Jason S. Mazer, Fla. Bar No. 149871

## **CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B).  This answer brief contains 8,360 words.

*/s/ Alexis Fields*
Alexis Fields

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 10, 2025, I have caused the foregoing to be e-filed with the Clerk of Court using CM/ECF system and served on Joseph Lang, Jr., Esq. jlang@carltonfields.com, CARLTON FIELDS, P.A., 4221 W. Boy Scout Blvd., Tampa, FL 33607, and Samuel B. Spinner, Esq., sspinner@carltonfields.com, CARLTON FIELDS, P.A. 700 NW 1st Ave., Suite 1200, Miami, FL33136.

*/s/ Alexis Fields*

Alexis Fields, Fla. Bar No. 95953
fields@kolawyers.com
KOPELOWITZ OSTROW
FERGUSON WEISELBERG GILBERT
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Tel: (954) 525-4100
Fax: (954) 525-4300