**24-11230, 24-13317**
**(CONSOLIDATED)**

_____

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

_____

SHERIFF OF BROWARD COUNTY

Plaintiff/Appellee,

v.

EVANSTON INSURANCE COMPANY

Defendant/Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
No. 22-cv-62076-WPD

_____

**CONSOLIDATED REPLY BRIEF OF APPELLANT**
**EVANSTON INSURANCE COMPANY**

_____

Samuel B. Spinner (FBN 118922)      Joseph H. Lang, Jr. (FBN 59404)
CARLTON FIELDS, P.A.                 CARLTON FIELDS, P.A.
700 N.W. 1st. Avenue                 4221 W. Boy Scout Blvd.
Suite 1200                           Suite 1000
Miami, Florida 33136                 Tampa, Florida 33607
sspinner@carltonfields.com           jlang@carltonfields.com


*Attorneys for Defendant/Appellant Evanston Insurance Company*

*Sheriff of Broward County v. Evanston Insurance Company*
Nos. 24-11230, 24-13317

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure Rule 26.1 and 11th Circuit Rule 26.1-1(a), Defendant-Appellant Evanston Insurance Company provides this Certificate of Interested Persons and Corporate Disclosure Statement. The following trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations have an interest in the outcome of this appeal:

1.    Allhalel, Joshua R. (Counsel for Plaintiff/Appellee)

2.    Allhalel Law (Counsel for Plaintiff/Appellee)

3.    Augustin-Birch, Honorable Panayotta D. (United States Magistrate Judge for the Southern District of Florida)

4.    Carlton Fields, P.A. (Counsel for Defendant/Appellant)

5.    Dimitrouleas, Honorable William P. (United Stated District Judge for the Southern District of Florida)

6.    Evanston Insurance Company (Defendant/Appellee)

7.    Ferguson, David (Counsel for Plaintiff/Appellee)

8.    Fields, Alexis (Counsel for Plaintiff/Appellee)

9.    Haimovitch, Seth D. (Counsel for Plaintiff/Appellee)

10.    Kennedys CMK, LLP (Counsel for Defendant/Appellant)

11.    Kopelowitz Ostrow Ferguson Weiselberg Gilbert (Counsel for Plaintiff/Appellee)

12.    Lang Jr., Joseph H. (Counsel for Defendant/Appellant)

13.    Lewis, Jordan H. (Counsel for Defendant/Appellant)

*Sheriff of Broward County v. Evanston Insurance Company*
Nos. 24-11230, 24-13317

14.    Markel Group, Inc. (**NYSE: MKL**) (see disclosure statement below)

15.    Markel Insurance Group, LLC (see disclosure statement below)

16.    Mazer, Jason S. (Counsel for Plaintiff/Appellee)

17.    Mazer Law P.A. (Counsel for Plaintiff/Appellee)

18.    Perkins, Kristen D. (Counsel for Defendant/Appellant)

19.    Spinner, Samuel B. (Counsel for Defendant/Appellant)

20.    Tony, Gregory, in his official capacity as Sheriff of Broward County (Plaintiff/Appellee)

21.    Vander Klok, Jedidiah D. (Counsel for Defendant/Appellant)

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-2, undersigned counsel hereby certifies that Defendant/Appellant Evanston Insurance Company is a direct subsidiary of Markel Insurance Group, LLC. Markel Insurance Group, LLC is a direct subsidiary of Markel Group, Inc., a publicly traded company (**NYSE: MKL**). No individual or entity owns more than 10% of Markel Group, Inc. stock.

# TABLE OF CONTENTS

*Page*

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ................................................................C-1

TABLE OF CONTENTS ........................................................................ i

TABLE OF CITATIONS ........................................................................ iii

ARGUMENT ........................................................................................1

    I.    The District Court Lacked Jurisdiction Under The
        Declaratory Judgment Act ........................................................1

        A.    Claim Expenses Cannot Exhaust the AAD ..................1

        B.    Evanston Preserved Its Objection to Greene's
                Declaration ..................................................................4

        C.    BSO Did Not Exhaust the AAD for the Policy Year .................6

    II.    The Parkland Shooting Incident Constitutes Multiple
        Occurrences .............................................................................7

        A.    BSO Misinterprets *Koikos* ......................................... 8

        B.    BSO Fails to Distinguish This Court's Precedent ....................10

        C.    Sovereign Immunity Cases Are Inapposite ............................. 11

        D.    The Parkland Shooting Incident Victims Are
                Distinguishable in Time and Space ...........................13

    III.    The District Court Erred in Applying *Contra
        Proferentem* ...........................................................................14

        A.    The Florida Supreme Court Would Adopt the
                Sophisticated Insured Exception................................15

        B.    The Parties Intended to Treat the Parkland Shooting
                Incident as Multiple Occurrences ...........................18

i

IV.     BSO Is Not Entitled to Attorneys' Fees and Costs Because
Evanston Never Denied a Claim for Policy Benefits .........................19

CONCLUSION ..........................................................................................22

CERTIFICATE OF COMPLIANCE.......................................................24

CERTIFICATE OF SERVICE ................................................................25

# TABLE OF CITATIONS

**Page(s)**

## Cases

*Age of Empire, Inc. v. Ocean Two Condo. Ass'n, Inc.*,
367 So. 3d 1278 (Fla. 3d DCA 2023)................................................................5–6

*Allstate Ins. Co. v. Orthopedic Specialists*,
212 So. 3d 973 (Fla. 2017) ...................................................................................3

*Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co.*,
232 So. 3d 273 (Fla. 2017) ...................................................................................5

*American Indem. Co. v. McQuaig*,
435 So. 2d 414 (Fla. 5th DCA 1983)....................................................................9

*Auto-Owners Ins. Co. v. Anderson*,
756 So. 2d 29 (Fla. 2000) ...................................................................................16

*Barnett v. Dep't of Fin. Servs.*,
303 So. 3d 508 (Fla. 2020) ...........................................................................12–13

*Bassette v. Std. Fire Ins. Co.*,
803 So. 2d 744 (Fla. 2d DCA 2001)...............................................................20–21

*Cardinal Point, LLC v. Edgewood Partners Ins. Ctr., Inc.*,
2024 WL 1632740 (S.D. Fla. Apr. 16, 2024)....................................................15

*Cert. Interested Underwriters at Lloyd's London v. Pitu, Inc.*,
95 So. 3d 290 (Fla. 3d DCA 2012).......................................................................3

*Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*,
948 A.2d 1285 (N.J. 2008)..................................................................................17

*Commodores Entm't Corp. v. McClary*,
879 F. 3d 1114 (11th Cir. 2018) ...........................................................................5

*ECB USA, Inc. v. Chubb Ins. Co. of N.J.*,
113 F.4th 1312 (11th Cir. 2024) .........................................................................17

*El-Ad Residences at Miramar Condo. Ass'n, Inc. v.
Mt. Hawley Ins. Co.*,
2010 WL 11506385 (S.D. Fla. Dec. 9, 2010).....................................15

*Fayad v. Clarendon Nat'l Ins. Co.*,
899 So. 2d 1082 (Fla. 2005) .............................................................16

*Guideone Elite Ins. v. Old Cuter Presbyterian Church, Inc.*,
420 F. 3d 1317 (11th Cir. 2005) .......................................................10

*Guttenberg v. Sch. Bd. of Broward Cnty.*,
303 So. 3d 518 (Fla. 2020) ..........................................................12–13

*\*Koikos v. Travelers Ins. Co.*,
849 So. 2d 263 (Fla. 2003) .................................................... 7–14, 18

*N.H. Ins. Co. v. RLI Ins. Co.*,
807 So. 2d 171 (Fla. 3d DCA 2002).....................................................9

*Odyssey Marine Expl., Inc. v. Unidentified, Shipwrecked Vessel or
Vessels*,
512 F. App'x 890 (11th Cir. 2013)........................................................7

*Open MRI Guys of Palm Beach, LLC v. Progressive Am. Ins. Co.*,
2024 WL 4280802 (Fla. 3d DCA Sept. 25, 2024)........................16–17

*RTG Furniture Corp. v. Indus. Risk Ins.*,
616 F. Supp. 2d 1258 (S.D. Fla. 2008).............................................15

*State Farm Fla. Ins. Co. v. Lime Bay Condo., Inc.*,
187 So. 3d 932 (Fla. 4th DCA 2016).................................................22

*State Nat'l Ins. Co. v. City of Miami*,
2010 WL 11506250 (S.D. Fla. May 11, 2010)...................................11

*\*State Nat'l Ins. Co. v. City of Miami*,
403 F. App'x 478 (11th Cir. 2010)..............................................10–11

*\*State Nat'l Ins. Co. v. Lamberti*,
362 F. App'x 76 (11th Cir. 2010) .........................................3, 10, 14

*Travelers Indem. Co. v. Garcia*,
2021 WL 2935425 (11th Cir. July 13, 2021) ....................................10

iv

*Travelers Ins. Co. v. Bartoszewicz*,
   404 So. 2d 1053 (Fla. 1981) ..................................................................16

*Tristar Lodging, Inc. v. Arch Specialty Ins. Co.*,
   434 F. Supp. 2d 1286 (M.D. Fla. 2006)..............................................20

*Swire Pc. Holdings v. Zurich Ins. Co.*,
   845 So. 2d 161(Fla. 2003)......................................................................3

## Statutes and Rules

Art. V, § 3(b)(5), Fla. Const....................................................................12

Fla. Stat. § 768.28 ..........................................................................12–13

Fla. R. App. P. 9.125...............................................................................12

# ARGUMENT

## I.    The District Court Lacked Jurisdiction Under The Declaratory Judgment Act.

In its Initial Brief, Evanston set forth that the district court improperly exercised jurisdiction over this case because the parties lacked a ripe coverage dispute. Specifically, BSO failed to allege and prove that it exhausted the Annual Aggregate Deductible ("AAD"), a necessary condition precedent to a claim for Policy benefits. To its credit, BSO acknowledges that it must exhaust the AAD to render its action "ripe for adjudication and not an advisory opinion." (Ans. Br. 7–8).

BSO argues that it satisfied this condition based on John Greene's attestations in his declaration. The district court erred by characterizing Green's incorrect legal conclusion to that effect as "undisputed" when Evanston expressly disputed that statement. Further, even accepting the figures in BSO's own claim ledger as true, it demonstrates that BSO did not exhaust the AAD for the Policy period.

### A.    Claim Expenses Cannot Exhaust The AAD.

The Policy's plain language provides that only judgments and settlements exceeding the SIR on a claim count toward the AAD. The AAD "applies to all 'ultimate net loss' in excess of the Self-Insured Retention …." (Doc. 20-3 at 53). The definition of "ultimate net loss" includes claim expenses, judgments, and settlements. (Doc. 20-3 at 27). An endorsement amends that definition, providing that "'claim expenses' will not be included in the calculation of 'ultimate net loss.'"

(Doc. 20-3 at 54). Therefore, only an "ultimate net loss"—judgments and settlements exceeding a claim's SIR—applies toward the AAD.

BSO's arguments to the contrary lack merit. First, BSO asserts, largely in a footnote, that it can exhaust the AAD by paying claim expenses notwithstanding the endorsement's plain language. BSO argues the endorsement deleting claim expenses from the definition of "ultimate net loss" does not accomplish that result and, instead, "expand[s] what Evanston will pay." (Ans. Br. 11 n.1). BSO then leaps to the conclusion that it is not prevented "from satisfying the AAD through the payment of claim expenses." (Ans. Br. 11 n.1). Not so. The endorsement means what it says: claim expenses are excluded from "ultimate net loss" and, therefore, cannot contribute toward satisfying the AAD.

Claim expenses exhausting the SIR, but not the AAD, does not render these provisions "irreconcilable." (Ans. Br. 10). The AAD is "not considered part of the [SIR] and does not accrue to the exhaustion of the [SIR]." (Doc. 20-3 at 53). A policy stating that defense costs exhaust the SIR but not the deductible creates no inconsistency. These are distinct provisions subject to different requirements.

Nor is it impossible to exhaust the AAD by paying judgments or settlements exceeding the per-occurrence SIR. BSO could satisfy the AAD for the entire Policy year if it incurred $500,000 in claim expenses and then paid a $500,000 judgment or settlement on a single claim. For all claims thereafter, BSO must satisfy only the

per-occurrence SIR, and any judgments or settlements exceeding the SIR would constitute an "ultimate net loss" for which Evanston may provide coverage, assuming the Policy's other conditions are met. BSO simply had no such claims during the Policy period. *See State Nat'l Ins. Co. v. Lamberti*, 362 F. App'x 76, 81 (11th Cir. 2010) ("BSO might pay damages that added up to a total in excess of the SIR amount, and yet not be entitled to any reimbursement from [excess insurer].").

BSO alternatively argues the district court should have ignored the endorsement entirely. Because it sought a declaration regarding the number of occurrences, BSO asserts the district court "had no authority" to "determine the effect of the disputed endorsement." (Ans. Br. 11). BSO's position flouts Florida law, which provides that "when analyzing an insurance contract, it is necessary to examine the contract in its context and as a whole, and to avoid simply concentrating on certain limited provisions to the exclusion of the totality of others." *Allstate Ins. Co. v. Orthopedic Specialists*, 212 So. 3d 973, 976 (Fla. 2017) (quoting *Swire Pac. Holdings v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003)). This holistic approach also requires consideration of the policy's "endorsements, or riders." *Cert. Interested Underwriters at Lloyd's London v. Pitu, Inc.*, 95 So. 3d 290, 292 (Fla. 3d DCA 2012) (citation omitted). This Court should reject BSO's contention that courts must review only the policy terms that the insured requests and ignore all other provisions.

3

BSO's insistence that this Court turn a blind eye to an endorsement amending the definition of a core Policy term speaks volumes. And, while BSO avoided referencing the AAD in its complaint, Evanston asserted BSO's failure to exhaust the AAD as a defense and argued at every opportunity that the parties had no ripe dispute because BSO failed to satisfy this condition precedent to coverage.

## B.    Evanston Preserved Its Objection to Greene's Declaration.

BSO contends that it exhausted the AAD because Greene attested to that purported fact in his declaration. BSO further asserts that Evanston challenged Greene's statement "for the first time on appeal." (Ans. Br. 12). But in the same breath, BSO acknowledges that Evanston "objected to the extent BSO was not asserting a fact but was making a legal argument." (Ans. Br. 13). There is no dispute that Evanston directly challenged Greene's incorrect legal conclusion, as well as the introduction of a new document (the claim ledger) that BSO never provided to Evanston in discovery. (Doc. 101 at 2; Doc. 102 at 4–5; Doc. 104 at 3–4). The district court's finding that it was "undisputed" that BSO exhausted the AAD is clearly erroneous and should not withstand this Court's scrutiny.

BSO next argues that Evanston could not contest Greene's statement without providing independent evidence. (Ans. Br. 14–15). Perhaps that would stand to reason had Greene attached no supporting records. However, Greene provided a ledger showing all of BSO's costs incurred and payments made during the Policy

period. Evanston argues that BSO's *own evidence* shows, in reality, that it never satisfied the AAD because there was no claim in which it incurred more than $500,000 combined in claim expenses, judgments, and/or settlements.

In other words, for the purposes of its position on summary judgment and in this appeal, Evanston does not dispute that BSO incurred the costs reflected in the ledger. Evanston disputes Greene's incorrect legal conclusion that BSO satisfied the AAD by making those payments. *See Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co.*, 232 So. 3d 273, 276 (Fla. 2017) (insurance policy interpretation is a "question of law"); *Commodores Entm't Corp. v. McClary*, 879 F. 3d 1114, 1129 (11th Cir. 2018) (affirming exclusion of testimony in the form of legal conclusions that "would have invaded the court's exclusive prerogative"). When the AAD endorsement is properly interpreted, BSO's own claim ledger constitutes an admission that BSO never satisfied the AAD for this Policy year.

BSO's position that Evanston must present independent evidence contradicting Greene's statement creates an illogical and impossible burden, and it is unnecessary here. Under BSO's reasoning, if Greene attested the Policy began on October 30, and he attached a copy of the Policy showing the date is October 1, Evanston could not point to the Policy as contradicting Greene's statement. BSO asserts that Evanston must provide separate evidence to create a dispute and, otherwise, the court must accept the witness's statement as true. That is not, and

cannot, be the law. *See generally Age of Empire, Inc. v. Ocean Two Condo. Ass'n, Inc.*, 367 So. 3d 1278, 1280 (Fla. 3d DCA 2023) ("Where the allegations in the complaint are contradicted by the complaint's attached exhibits, the plain meaning of the exhibits control and may be the basis for a motion to dismiss."). This Court should find that Evanston properly challenged Greene's incorrect legal conclusion.

### C.    BSO Did Not Exhaust the AAD for the Policy Year.

It is critical to understand precisely what BSO argues regarding the AAD. BSO never contends, even alternatively, that it exhausted the AAD by paying $500,000 in judgments or settlements exceeding the SIR on claims during the Policy year. BSO rests on its arguments that the AAD is exhausted through payments of claim expenses or judgments/settlements not exceeding the SIR. The Policy's plain language renders both positions equally untenable.

To be clear, the claim ledger shows no claim in which the total of Paid Legal (claim expenses) and Paid BI/Liability (judgments and settlements) exceeds $500,000. (Doc. 99-2 at 6–13). Were that not true, BSO would demonstrate otherwise. That explains why BSO urges this Court to accept Greene's legal opinion at face value in lieu of reviewing the evidence BSO itself provided.

Furthermore, BSO's incurring more than $500,000 in claim expenses in defending the Parkland Shooting Incident lawsuits does not change the result. Those claim expenses may satisfy one or more SIRs, but BSO still failed to satisfy the AAD

by paying $500,000 in judgments or settlements exceeding the SIR on those claims or other claims during the Policy year. BSO indisputably paid no judgment or settlement to any victim, and it may never do so because the victims already recovered more than $300,000 from the school board. (Doc. 90-7 at 10–12).

Because BSO never exhausted the AAD, it necessarily sought an advisory opinion as to how the district court would interpret the Policy if BSO later satisfied this condition and formally demanded indemnity from Evanston for an "ultimate net loss." *See Odyssey Marine Expl., Inc. v. Unidentified, Shipwrecked Vessel or Vessels*, 512 F. App'x 890, 895 (11th Cir. 2013) ("This piling-on of contingencies falls far short of the requirements for establishing an actual case or controversy for purposes of the Declaratory Judgment Act and would render our attempt on our part to adjudicate the merits of [plaintiff's] claim an impermissible advisory opinion."). The district court should not have exercised jurisdiction to answer one question pertinent to a hypothetical future coverage dispute. This Court should reverse.

**II.    The Parkland Shooting Incident Constitutes Multiple Occurrences.**

In its Initial Brief, Evanston established that the district court erred in finding the defined term "occurrence" ambiguous based on its flawed interpretation of *Koikos v. Travelers Insurance Co.*, 849 So. 2d 263 (Fla. 2003). BSO provides a cursory summary of *Koikos* in response, but it fails to address many of Evanston's arguments and proposes that the Court reject its own precedent. Contrary to BSO's

contentions, *Koikos* and its progeny establish that a multiple victim shooting event results in multiple separate occurrences as a matter of law.

## A.    BSO Misinterprets *Koikos*.

As it did in the district court, BSO misreads *Koikos* as a decision based on ambiguity. The Florida Supreme Court rephrased the certified question as one seeking a ruling as a matter of law: "When the insured is sued based on negligent failure to provide adequate security arising from separate shootings of multiple victims, are there multiple occurrences under the terms of an insurance policy[,]" defining that term exactly as it is defined in Evanston's Policy. *Koikos*, 849 So. 2d at 264. The Court answered as follows: "[W]e conclude that under the terms of the general liability policy at issue in this case, each shooting of a separate victim constitutes a separate occurrence. Therefore, we answer the certified question in the affirmative." *Id.*

BSO does not reference the certified question in its argument. It effectively argues, though, that the Florida Supreme Court did not affirmatively answer the question and, instead, effectively answered: "It depends which interpretation the insured prefers because 'occurrence' is ambiguous." The Court could not have issued a broad ruling that the incident was multiple occurrences under the "policy at issue"—which has the same "occurrence" definition as the subject Policy—if it

intended to allow courts to reach the opposite conclusion on the same or similar facts when the insured favored a different interpretation.

BSO also focuses on one statement toward the end of the opinion that the Court "construe[d] the term 'occurrence' in [the] policy in favor of the insured." *Id.* at 273. In this statement, the Florida Supreme Court was not determining that the defined word "occurrence" was per se ambiguous. Rather, the Court referenced the fact that the policy failed to deem separate similar incidents as a single occurrence, noting that "there is no unambiguous language in [the] policy that would have put [insured] on notice that a 'series of similar causes' would be considered one occurrence." *Id.* at 273. The Policy likewise has no aggregate occurrence language and, as a result, separate occurrences remain separate under Florida precedent.

BSO also highlights the Court's statement that it reached "its decision by looking at the language of the policy in a manner consistent with precedent regarding the construction of insurance policies in this state." *Id.* This is not, as BSO suggests, a pronouncement that the Court ruled on ambiguity grounds. The Court interpreted "occurrence" consistent with prior Florida caselaw, including *American Indemnity Co. v. McQuaig*, 435 So. 2d 414 (Fla. 5th DCA 1983), and *New Hampshire Insurance Co. v. RLI Insurance Co.*, 807 So. 2d 171 (Fla. 3d DCA 2002), both of which found that shooting incidents resulted in multiple occurrences without

reference to ambiguity. If *Koikos* disagreed with these cases, it would have rejected them, not cited them with approval.

## B.    BSO Fails to Distinguish This Court's Precedent.

While the district court nonetheless found *Koikos* ambiguous, it reached that conclusion by rejecting this Court's precedent. Evanston pointed to several opinions—both binding and persuasive—finding that similar incidents spawned multiple occurrences as a matter of Florida law. *See Guideone Elite Ins. v. Old Cuter Presbyterian Church, Inc.*, 420 F. 3d 1317 (11th Cir. 2005); *Lamberti*, 362 F. App'x 76; *State Nat'l Ins. Co. v. City of Miami*, 403 F. App'x 478 (11th Cir. 2010); *Travelers Indem. Co. v. Garcia*, 2021 WL 2935425 (11th Cir. July 13, 2021).

BSO quickly dispenses with this Court's entire post-*Koikos* jurisprudence, primarily on the basis that some decisions are merely persuasive. These decisions, though, are factually analogous and certainly more applicable than the sovereign immunity cases on which BSO heavily relies.

For example, BSO contends *Lamberti* does not apply because it addressed "drastically different facts." (Ans. Br. 28). Quite the opposite. Both *Lamberti* and this case concern a dispute between BSO and its excess insurer turning on whether a multiple victim incident was one occurrence or multiple occurrences. The only difference is the nature of the injuries suffered by the individual victims; in both *Lamberti* and this case, the victims were individually harmed as part of one overall

10

incident and filed separate lawsuits against BSO. This Court rejected BSO's assertion that the policy was ambiguous and held that the "separate lawsuits by many different plaintiffs, all of whom had their own interactions with members of the BSO, represent more than one occurrence." *Id.* at 81–82.

BSO also discards *State National*, in which this Court affirmed the district court's ruling that "*Koikos* never indicated that the policy was ambiguous as to the meaning of the term 'occurrence[.]'" *State Nat'l Ins. Co. v. City of Miami*, 2010 WL 11506250, at *5 n.11 (S.D. Fla. May 11, 2010). BSO quibbles that this Court affirmed "for the reasons set forth" in the summary judgment order without further analysis. *State Nat'l Ins. Co.*, 403 F. App'x at 479. Once again, BSO sidesteps the decision rather than distinguish it on the merits. This Court effectively adopted the district court's ruling as its opinion and indicated no disagreement with the detailed analysis rejecting the insured's argument that "occurrence" was ambiguous based on *Koikos*.

## C. Sovereign Immunity Cases Are Inapposite.

BSO also argues that "Florida courts have consistently held instances of mass shooting events to be a single occurrence, whether through statute or insurance policy interpretation." (Ans. Br. 20). Yet, BSO cites no such insurance case. Nor could it because: (1) there are no insurance cases supporting BSO's interpretation;

11

and (2) the Florida Supreme Court holds that sovereign immunity cases and insurance cases address different issues and are not interchangeable precedent.

Recall that section 768.28, Florida Statutes, caps the negligence liability of state agencies at $300,000 for all claims "arising out of the same incident or occurrence." § 768.28(5)(a), Fla. Stat. The statute does not define "occurrence." In contrast, the Policy defines it as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 20-3 at 25).

For that reason, the Florida Supreme Court distinguished *Koikos* and found it irrelevant to its interpretation of "occurrence" under section 768.28: "Subsection (5) does not use the word 'accident,' and given the wholly different contexts, we find the argument based upon the insurance policy cases unhelpful and unpersuasive." *Barnett v. Dep't of Fin. Servs.*, 303 So. 3d 508, 516 (Fla. 2020) (emphasis added).

On the same date the Florida Supreme Court issued *Barnett*, it also issued *Guttenberg v. School Board of Broward County*, 303 So. 3d 518 (Fla. 2020), which arose from the Parkland Shooting Incident. *Id.* at 519. In a short opinion relying on *Barnett*, the Court approved the trial court's ruling[1] that the incident was one

---

[1] The Fourth District Court of Appeal certified the trial court's order as requiring immediate resolution. The Florida Supreme Court accepted the case via pass-through jurisdiction. *See* art. V, § 3(b)(5), Fla. Const.; Fla. R. App. P. 9.125.

occurrence under section 768.28 such that BSO's aggregate liability to all victims of the Parkland Shooting Incident cannot exceed $300,000. *Id.* [2]

BSO maintains that "if it is reasonable to interpret the Parkland Shooting Incident as a single occurrence with multiple victims in the sovereign immunity context, then it is an equally reasonable interpretation in the insurance context." (Ans. Br. 21). The Florida Supreme Court emphatically rejected that exact argument. The district court erred in dismissing this Court's binding and persuasive precedent in favor of inapplicable sovereign immunity decisions.

### D.    The Parkland Shooting Incident Victims Are Distinguishable in Time and Space.

BSO alternatively argues this case is factually distinguishable from *Koikos* because the occurrences cannot be separated in time and space. (Ans. Br. 22). According to BSO, the two rapid gunshots in *Koikos* were separable, but the shots fired by Cruz over a several-minute period are not. BSO's claim is perplexing because the Record contains a report detailing exactly when the separate shots were fired throughout the incident. (Doc. 90-2).

---

[2] *Guttenberg* confirms that BSO cannot exhaust the AAD by paying judgments or settlements in cases arising from the Parkland Shooting Incident. Even if BSO satisfies one or more SIRs, it will not pay a judgment or settlement exceeding $300,000. That would leave a minimum $200,000 balance under the AAD, which is why BSO must have satisfied the AAD by paying judgments or settlements exceeding the SIR in other cases (i.e., for example, by a judgment or settlement involving a civil rights claim under 42 U.S.C. § 1983, which is unlikely to be limited by the sovereign immunity caps). It did not.

BSO further attempts to distinguish *Koikos* because some victims filed suit for purely emotional damages. (Ans. Br. 22). This is a red herring because BSO framed the parties' dispute as whether BSO had to exhaust only one SIR or a separate SIR "for each Plaintiff that filed a lawsuit." (Doc. 20 at ¶ 29). Evanston asserts that each lawsuit is subject to a separate SIR regardless of the nature of the victim's injuries. This Court also need not determine the exact number of occurrences because BSO sought a declaration only whether there was one occurrence or several occurrences. (Doc. 20 at 5); *see Lamberti*, 362 F. App'x at 82 ("[T]his court is only called upon to determine whether there is one occurrence or more than one occurrence. It is clear that it is the latter.").

For these reasons, the district court erred in refusing to follow this Court's precedent and misreading *Koikos* as a decision based on ambiguity. BSO cannot decide on a whim how to interpret "occurrence" depending on which view it favors in a particular case. This Court should reverse the Final Judgment.

### III.   The District Court Erred in Applying *Contra Proferentem*.

Evanston argued that even if the district court properly found "occurrence" ambiguous, it erred by applying *contra proferentem* because BSO is a sophisticated insured. Given BSO's involvement in negotiating the Policy's terms, the district court should have considered extrinsic evidence regarding the parties' intent to treat losses like the Parkland Shooting Incident as multiple occurrences.

14

In response, BSO does not dispute its sophistication. Nor could it. BSO also does not dispute the merits of Evanston's argument regarding the parties' intent. BSO rests on its assertion that no exception to *contra proferentem* exists under Florida law and, therefore, "it does not matter that BSO is a sophisticated party." (Ans. Br. 23). While BSO notes that Florida has not adopted the exception, it fails to plausibly explain why Florida would not join the weight of nationwide authority if presented that opportunity. And, given BSO's concessions, Evanston should prevail if this Court predicts, as it can, that Florida would recognize the exception.

## A.    The Florida Supreme Court Would Adopt the Sophisticated Insured Exception.

Evanston acknowledges that no binding decision addresses whether Florida law recognizes the sophisticated insured exception. The only decisions on point are those of district courts in this circuit applying the exception under Florida law. *See RTG Furniture Corp. v. Indus. Risk Ins.*, 616 F. Supp. 2d 1258, 1264 (S.D. Fla. 2008); *Cardinal Point, LLC v. Edgewood Partners Ins. Ctr., Inc.*, 2024 WL 1632740, at *7 n.9 (S.D. Fla. Apr. 16, 2024); *El-Ad Residences at Miramar Condo. Ass'n, Inc. v. Mt. Hawley Ins. Co.*, 2010 WL 11506385, at *2 n.1 (S.D. Fla. Dec. 9, 2010). BSO asserts these decisions were wrongly decided, but it offers no contrary authority from any jurisdiction rejecting the sophisticated insured exception.

BSO posits that the Florida Supreme Court would not recognize the sophisticated insured exception because all insurance policy ambiguities must be

construed against the insurer regardless of the context. The Court has not painted the issue with such broad strokes. Instead, the Court construes ambiguities against the "drafter who prepared the policy." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000); *Fayad v. Clarendon Nat. Ins. Co.*, 899 So. 2d 1082, 1086 (Fla. 2005) ("Ambiguous coverage provisions are construed strictly against the insurer that drafted the policy and liberally in favor of the insured."). The precedent establishes this "general rule" that usually requires construction in favor of the insured "because it is more often the insurer who draws the contract." *Travelers Ins. Co. v. Bartoszewicz*, 404 So. 2d 1053, 1054 (Fla. 1981).

BSO also argues Florida law uniquely addresses policy interpretation, which misses the mark because *contra proferentem* is a common law doctrine. Like Florida, many jurisdictions apply the doctrine as a general rule and ordinarily construe ambiguities against the drafter. Those same jurisdictions recognize a common law exception to the common law rule, which should equally apply under Florida law. The Florida Supreme Court simply has not taken the opportunity to address the issue.

To be sure, the typical insurance dispute concerns an adhesion policy: "a standardized contract, which, imposed and drafted by the party of superior bargaining strength [insurer], relegates to the subscribing party [insured] only the opportunity to adhere to the contract or reject it." *Open MRI Guys of Palm Beach, LLC v. Progressive Am. Ins. Co.*, 2024 WL 4280802, at *3 (Fla. 3d DCA Sept. 25,

16

2024) (alterations in original) (citation omitted). The cases BSO cites address this common scenario in which a layperson obtained a standard insurance policy. *Contra proferentem* evens the playing field in those circumstances.

Courts applying the sophisticated insured exception recognize that resolving ambiguities should not be a one-size-fits-all approach. In most cases, the parties have no extrinsic evidence for the court to consider because no meaningful discussion occurred before they executed the policy. The typical insured is not represented by a team of attorneys, risk managers, and multinational insurance brokers. Ample extrinsic evidence exists in this case *because* BSO is a sophisticated entity whose broker negotiated the Policy at arms-length with Evanston.

The sophisticated insured exception allows for some flexibility to *contra proferentem* and ensures that parties are held to the terms for which they consciously bargained. *See ECB USA, Inc. v. Chubb Ins. Co. of N.J.*, 113 F.4th 1312, 1327 (11th Cir. 2024) ("[T]he rules tending to favor an insured that has entered into a contract of adhesion are inapplicable where, as here, both parties are sophisticated commercial entities with equal bargaining power" (quoting *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 948 A.2d 1285, 1294 (N.J. 2008)).

Evanston submits that the Florida Supreme Court would adopt the sophisticated insured exception to *contra proferentem* and, when applicable, allow

courts to consider extrinsic evidence of the parties' intent to resolve disputes over ambiguous insurance policy language.

**B.    The Parties Intended to Treat the Parkland Shooting Incident as Multiple Occurrences.**

As set forth above, BSO does not dispute two of Evanston's key arguments on the merits. BSO cannot dispute that it qualifies as a sophisticated insured. BSO also cannot dispute the evidence showing that the parties intended to have the standard "occurrence" definition without the related occurrence endorsement contained in BSO's predecessor policy.

BSO asserts that the sophisticated insured exception should not apply because it did not draft the "occurrence" language. (Ans. Br. 23–24). BSO misconstrues the issue because the exception applies regardless of which party drafted the language deemed ambiguous. BSO requested several modifications to the Policy and did not accept an adhesion contract. It acted in accordance with its sophistication and bargaining power, which is why it should not be shielded from its decision making by *contra proferentem*, a doctrine intended to protect laypersons.

BSO also fails to appreciate that the parties effectively modified the definition of "occurrence" by removing the related occurrence endorsement contained in the predecessor Lexington policy. [3] That modification restored the original language,

---

[3] The endorsement in Lexington's policy provided that one SIR would apply to a "single event" which it defined as an "occurrence … or series of continuous,

under which each victim of the Parkland Shooting Incident constitutes a separate occurrence. *Koikos* emphasized that the policy at issue could have included a similar endorsement grouping separate occurrences together as one occurrence. 849 So. 2d at 272–73. BSO chose not to pay for that provision, and it knew how the omission of a similar endorsement would be construed—and should have been construed in this case—based on the prior caselaw, including cases in which BSO was a party.

At bottom, BSO should not receive the benefit of *contra proferentem*. When a sophisticated insured negotiates with the insurer on an even playing field, the court should consider available evidence of the parties' intent to resolve ambiguities. The evidence in this case shows that the parties intended to treat the Parkland Shooting Incident as multiple occurrences, and that BSO understood the implications of removing the related occurrence endorsement. Therefore, even if the Court finds "occurrence" ambiguous, it should reverse the Final Judgment.

## IV.    BSO Is Not Entitled to Attorneys' Fees and Costs Because Evanston Never Denied a Claim for Policy Benefits.

The parties agree that this Court must reverse the Fee Judgment if it reverses the Final Judgment. (Ans. Br. 29–30). The parties also agree that it is not necessary to duplicate at length their arguments regarding exhaustion of the AAD. Evanston

---

repeated, or related occurrences … arising out of the same related facts or circumstances regardless of the number of Insureds, claimants, claims made or suits brought." (Doc. 91-1 at 31).

maintains that, because BSO failed to satisfy the AAD, it had no claim for indemnity under the Policy and, therefore, was not forced to file suit against Evanston.

Further, the district court's finding that Evanston denied coverage before BSO filed suit is clearly erroneous. BSO never alleged in its complaint that Evanston denied coverage. To the contrary, BSO readily admitted that it did not seek indemnity for an "ultimate net loss" in connection with the Parkland Shooting Incident. (Doc. 23 at 15). That is precisely why the Final Judgment does not declare that Evanston denied coverage or otherwise breached the Policy.

BSO nonetheless argues that evidence supports the district court's finding that Evanston denied coverage in its September 28, 2020, letter. Contrary to that finding, Evanston only reiterated its position that BSO had to exhaust one SIR for each victim who filed a lawsuit before Evanston could be obligated to pay an "ultimate net loss." Evanston could not have denied coverage for a claim BSO never made. In other words, the district court did not find that Evanston "wrongfully withheld payment of the proceeds of the policy" as required to support a fee award. *See Tristar Lodging, Inc. v. Arch Specialty Ins. Co.*, 434 F. Supp. 2d 1286, 1298 (M.D. Fla. 2006).

BSO contends this case is controlled by *Bassette v. Standard Fire Insurance Co.*, 803 So. 2d 744 (Fla. 2d DCA 2001), even a cursory review of which demonstrates that it is distinguishable. In *Bassette*, the insured was injured in an automobile accident. *Id*. at 745. The insured sued the tortfeasors and her insurer,

20

from which she sought uninsured motorist benefits. *Id.* The insurer asked the insured to execute authorizations for her medical records. *Id.* The insured refused and filed a separate declaratory relief action. *Id.* The trial court found for the insured, ruling that the insurer must request the authorization through formal discovery procedures because the case was in litigation. *Id.* The trial court awarded the insured her attorney's fees incurred in the declaratory judgment action. *Id.* at 745–46.

The Second District Court of Appeal affirmed, reasoning that the insurer effectively denied coverage by informing the insured that her failure to execute the authorizations would void coverage under the policy. *Id.* at 746. Therefore, the court characterized the dispute as "whether [insured] would be covered under the policy." *Id.* Under these circumstances, the insured reasonably filed the declaratory judgment action to determine whether her failure to execute the authorization would support a denial of coverage in the underlying case. *Id.* at 746–77.

Unlike *Bassette*, this case cannot be characterized as a suit to determine coverage. In fact, the insured in *Bassette* already sued the insurer for policy benefits before bringing the separate declaratory judgment action. The insurer threatened to deny coverage for an alternative reason unrelated to the merits—the insured's alleged breach of her post-loss duty of cooperation. The insured had no choice but to litigate whether the insurer could properly deny coverage on that basis.

This case does not concern a similar coverage dispute. Evanston did not threaten to deny coverage due to a breach of BSO's post-loss obligations. Instead, the parties disagreed only as to the interpretation of "occurrence." Resolution of that dispute did not result in a finding that the Parkland Shooting Incident was or was not a covered loss under the Policy. For that reason, the lawsuit was not required to "force the insurer to satisfy its obligations under the insurance contract." *State Farm Fla. Ins. Co. v. Lime Bay Condo., Inc.*, 187 So. 3d 932, 935 (Fla. 4th DCA 2016).

The fact remains that BSO's action addressed one element of a hypothetical future coverage claim that may never materialize. Regardless of the number of occurrences, BSO must still satisfy the AAD and pay a judgment or settlement constituting an "ultimate net loss" before it can seek indemnity from Evanston. Because Evanston never denied Policy benefits due and owing, BSO was not forced to file suit at this juncture. BSO should not be rewarded with attorneys' fees and costs for its race to the courthouse with piecemeal and premature litigation. Accordingly, regardless of whether this Court affirms the Final Judgment, it should reverse the Fee Judgment.

## CONCLUSION

For the reasons stated herein, Evanston respectfully requests that this Court reverse the Final Judgment and Fee Judgment.

22

March 13, 2025.                    Respectfully submitted,

                                   **CARLTON FIELDS, P.A.**

                                   */s/ Joseph H. Lang, Jr.*
                                   Joseph H. Lang, Jr. (FBN 059404)
                                   4221 W. Boy Scout Boulevard
                                   Tampa, FL 33607-5780
                                   Telephone: (813) 223-7000
                                   Facsimile: (813) 229-4133
                                   Email: jlang@carltonfields.com

                                   Samuel B. Spinner (FBN 118922)
                                   700 N.W. 1st Avenue
                                   Suite 1200
                                   Miami, Florida 33136
                                   Telephone: (305) 530-0050
                                   Facsimile: (813) 530-0055
                                   Email: sspinner@carltonfields.com

                                   *Attorneys for Defendant/Appellant*
                                   *Evanston Insurance Company*

## CERTIFICATE OF COMPLIANCE

The undersigned attorney hereby certifies that this Consolidated Reply Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains **5,326** words, excluding the parts exempted by Fed. R. App. P. 32(f). The undersigned attorney also certifies that this Reply Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word with Times New Roman 14-point font.

/s/ *Joseph H. Lang, Jr.*
Joseph H. Lang, Jr.

## CERTIFICATE OF SERVICE

I certify that on March 13, 2025, I caused the foregoing to be e-filed with the

Clerk of Court using the CM/ECF system and served on counsel of record.

/s/ Joseph H. Lang, Jr.
Joseph H. Lang, Jr.